### SAMUEL WINSLOW *vs.* JAMES L. PLIMPTON.

Worcester.   Oct. 7, 1882. — Jan. 8, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

A declaration alleged that the parties made a contract, whereby the plaintiff agreed to manufacture roller-skates for the defendant, for an indefinite time, to the extent of the facilities which the plaintiff then had to manufacture them at his factory; that, for that purpose, the defendant ordered the plaintiff to procure and keep on hand for the defendant at all times, during the continuance of the contract, at least two weeks' supply of stock and parts of skates, so that the plaintiff might be able to keep his said factory running at its full capacity at all times; that, pursuant to said contract, the plaintiff entered upon the manufacture of skates, and, in accordance with said order, procured and kept at all times, during said contract, at his factory, for the purpose of manufacturing skates for the defendant, a large quantity of stock and parts of roller-skates; that, on a day named, while the plaintiff was manufacturing skates under this contract, and had on hand two weeks' supply of stock and parts of skates, the defendant ordered him to desist from the manufacture of skates and to manufacture no more for him; that the value of the stock and parts of skates on hand was a sum stated; that the defendant directed him not to use said stock and parts of skates in the manufacture of roller-skates, and that he had no right to use the same for any purpose; that the plaintiff asked the defendant to take said stock and parts of skates and pay him therefor, which the defendant refused to do; and that the plaintiff had the same, but they were of no use or value to him, whereby he had sustained damage in a sum named. At the trial, the evidence tended to show that the plaintiff agreed to manufacture at his

factory for the defendant, until further notice, as many skates as his facilities there would enable him to manufacture; that the defendant agreed to take all the skates so manufactured until further notice, and to pay the plaintiff an agreed price therefor; that the plaintiff entered upon the manufacture of skates under this contract, and, while so engaged, the defendant requested him to keep on hand always at least two weeks' supply of stock, that he might manufacture skates faster; that the plaintiff complied with this request; that afterwards, while the plaintiff was engaged in manufacturing skates, the defendant, without any warning, gave him notice to immediately discontinue manufacturing skates, and forbade him to manufacture into skates the stock on hand, and refused to take and pay for said stock; and that the plaintiff could not manufacture into skates said stock without the defendant's permission, because the manufacture of the skates was protected by letters-patent owned by him, whereby the stock on hand, being of great value, became of little or no value to the plaintiff. *Held*, that the evidence did not support the declaration.

CONTRACT. At the trial in the Superior Court, before *Mason*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*H. L. Parker & S. H. Tyng*, for the defendant.

*F. T. Blackmer*, for the plaintiff.

FIELD, J. It appears in the exceptions, that, " at the close of the evidence, the defendant asked the court to rule that the first count of the amended declaration did not set forth a cause of action, and that, upon the evidence as above stated, he could not maintain his action upon either count of his declaration, but the court declined so to rule, but ruled that there was evidence for the jury." The court had previously ruled " that the plaintiff could recover only under his amended declaration." The defendant's request for a ruling must therefore mean that the plaintiff could not maintain his action upon either count of the amended declaration. That declaration contains two counts, of which the last is an ordinary count upon an account annexed.

It is difficult to determine with certainty what cause of action the pleader intended to set out in the first count. That count is, in substance, that the parties made a contract together, whereby the plaintiff agreed to manufacture roller skates for the defendant, for an indefinite time, " to the extent of the facilities which the plaintiff then had to manufacture them at his factory," and " for that purpose " the defendant ordered the plaintiff to procure and keep on hand for the defendant at all times, during the continuance of the contract, at least two weeks' supply of stock and parts of skates, " so that the plaintiff might be able to keep

his said factory running at its full capacity at all times;" that, pursuant to said contract, the plaintiff entered upon the manufacture of skates, and, in accordance with said order, "procured and kept at all times, during said contract, at said factory, for the defendant, for the purpose of manufacturing skates for the defendant, as aforesaid, a large quantity of stock and parts of said roller skates, as the defendant ordered and directed him to do;" that, on May 27, 1876, while the plaintiff was manufacturing skates under this contract and had on hand two weeks' supply of stock and parts of skates procured for the defendant, as aforesaid, the defendant ordered him "to desist from the manufacture of skates, as aforesaid, and to manufacture no more for him, the defendant;" that the value of the stock and parts of skates on hand were as stated in the account annexed; "that the defendant directed him not to use said stock and parts of skates in the manufacture of roller skates, and that he had no right to use the same for any purpose, and the plaintiff asked the defendant to take the said stock and parts of skates and pay him therefor, which the defendant refused to do; that the plaintiff has the same, but they are of no use to him nor of any value to him. Wherefore the plaintiff says that, by the neglect and refusal of . the defendant to take and pay for said stock and skates, so ordered by him as aforesaid, and which he agreed to take and pay for, as aforesaid, the plaintiff suffered great damage, to wit, in the sum of thirty-eight hundred and thirty-eight dollars and sixty-nine cents." The account annexed contains items and values, the total of which is $3838.69.

The construction we put upon this count is, that, if it alleges anything with the certainty required in declarations, it alleges that the plaintiff procured the stock and parts of skates for the defendant at his request, and either that the defendant agreed to take them from the plaintiff and pay for them, or that he was under a legal obligation so to do if he ordered the plaintiff to discontinue manufacturing skates, and that this the defendant has refused to do.

If the stock and parts of skates on hand were purchased or procured by the plaintiff for the defendant at his request, the plaintiff can maintain his action against the defendant, under the pleadings, if the defendant refused to accept and pay for them,

or if they have been applied to the defendant's use; but the evidence stated does not tend to prove such a cause of action.

There was evidence tending to prove that the plaintiff agreed to manufacture at his factory for the defendant, "until further notice," as many skates as his facilities there would enable him to manufacture; that the defendant agreed to take all the skates so manufactured "until further notice," and to pay the plaintiff an agreed price therefor; that the plaintiff entered upon the manufacture of skates under this contract, and, while so engaged, the defendant requested him to keep on hand always at least two weeks' supply of stock, that he might manufacture skates faster; that the plaintiff complied with this request; that thereafterwards, while the plaintiff was engaged in manufacturing skates, the defendant, without any warning, gave him notice to immediately discontinue manufacturing skates, and forbade him to manufacture into skates the stock on hand, and refused to take and pay for the stock on hand; and that the plaintiff could not manufacture into skates the stock on hand without the permission of the defendant, because the manufacture of the skates was protected by letters patent which the defendant owned; whereby the stock on hand, being of great value, became of little or no value to the plaintiff.

There was no evidence that the defendant agreed to receive from the plaintiff the stock and parts of skates on hand and to pay him therefor, or that the plaintiff procured the stock and parts of skates on hand for the defendant in any such sense that they became the defendant's property, or were held by the plaintiff as the property of the defendant. The evidence tended to prove that the plaintiff procured the stock and parts of skates to enable himself to furnish materials for and to manufacture skates for the defendant under his contract, and that the defendant was to receive and pay for the skates when they were manufactured, but not for the materials for skates before they were manufactured into skates. There was no evidence from which there could be inferred any legal obligation on the part of the defendant specifically to take the stock and parts of skates on hand, and to pay the plaintiff therefor.

Whether, on the facts which this evidence tended to prove, it would not have been the duty of the defendant to have given

the plaintiff two weeks' notice, or reasonable notice, of an intention to determine the contract, before he gave a peremptory order to stop manufacturing, and whether the defendant would not be liable to the plaintiff in damages for the non-performance or breach of that duty, need not now be considered. Such is not the cause of action set forth in either count of the amended declaration. Apparently the plaintiff intended to set out such a cause of action in the first count of his original declaration, although it did not allege that the stock on hand had been procured at the express request of the defendant. The court ruled that the plaintiff could recover only under the amended declaration ; to this ruling no exception was taken, and the correctness of it is not before us. As no evidence is stated which tends to prove either count of the amended declaration, the

*Exceptions are sustained.*